**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

CURTIS COFFEY, on behalf of     :
himself and all others similarly    :
situated,                        :
                                  :
          Plaintiff,        :     CIVIL ACTION NO.
                                  :     1:08-CV-2911-JOF
      v.                     :
                                  :
KELLOGG BROWN & ROOT, et al.,   :
                                  :
          Defendants.

## OPINION AND ORDER

This matter is before the court on Defendants' motion to dismiss and to compel arbitration [7].

## I.    Background

### A.    Procedural History and Allegations in Complaint

Plaintiff, Curtis Coffey, filed this proposed class action suit against Defendants, Kellogg Brown & Root; Kellogg Brown & Root, LLC; Kellogg Brown & Root, Inc.; Kellogg Brown & Root Services, Inc.; Kellogg Brown & Root International, Inc.; Kellogg Brown & Root, S. De R.L.; KBR Technical Services, Inc.; DII Industries, LLC; Service Employees International, Inc. ("SEII"); and Overseas Administrative Services, LTD, on August 12, 2008, in the Superior Court of Fulton County, alleging that Defendants are liable

to him on theories of negligence; negligent undertaking; agency, joint venture, joint enterprise, direct corporate liability; gross negligence/exemplary damages; and common law civil conspiracy to commit fraud, for personal injuries sustained by Plaintiff and allegedly caused by Defendants' negligence in hiring and training civilian employees in Iraq. Defendants removed the suit to this court on September 17, 2008.

In their briefing on the instant motion to dismiss, Defendants note that although Plaintiff's suit names DII Industries, LLC, as a Defendant, that company has no corporate relationship with Plaintiff's employer SEII or any of SEII's affiliated corporations. Defendants note that DII Industries, LLC, is a wholly-owned subsidiary of the Halliburton Company which was separated from KBR, Inc., in April 2007, prior to Plaintiff's employment. Plaintiff does not contest this and, therefore, the court grants Defendants' motion to dismiss DII Industries, LLC, from this suit. Defendants further note that Defendant Kellogg Brown & Root is not an existing legal entity. The remaining Defendants are all in a corporate relationship with Defendant Service Employee International, Inc. ("SEII"), Plaintiff's direct employer.[1] The court, however, adopts the same convention as the parties and refers to Defendants collectively as "Kellogg Brown & Root" or "KBR."

---

[1]For the purposes of context, Defendants assert via affidavit (and Plaintiff does not contest) that KBR, Inc., is the ultimate parent company of Kellogg Brown & Root Services, Inc.; Kellogg Brown & Root International, Inc.; Kellogg Brown & Root LLC; Kellogg Brown & Root, S. de R.L.; KBR Technical Services, Inc.; Overseas Administrative Services; and SEII. *See* Affidavit of Robert Bell, ¶ 4.

2

In his complaint, Plaintiff alleges that he brings the suit on behalf of "those KBR workers in Iraq that [sic] have been harmed by Defendants' acts and practices, specifically those acts and practices related to Defendants' gross negligence and lack of adequate care in hiring, retention, training, supervising, and protecting its civilian workers in Iraq." *See* Cmplt., ¶ 2. Plaintiff asserts that he was hired to recover disabled vehicles, including tanks, personnel carriers, jeeps, cars, and trucks. *Id.*, ¶ 12. He worked in the Recovery Division in Iraq and was told that only persons with more than three years' experience would be considered for employment in this division and that specialized training would be provided. *Id.*

Plaintiff was injured on April 24, 2008, "in an accident involving a wrecker at the 'Q-West' base in Iraq." *Id.*, ¶ 13. Plaintiff alleges the accident happened when a "fellow worker named David" "negligently operated the control for the wrecker's boom and thereby crushed Mr. Coffey's finger with the boom." *Id.*, ¶ 14. Plaintiff has no use of the finger and continues to suffer pain which precludes work in the field, limits his day-to-day activity, and prevents regular sleeping. *Id.*

Plaintiff avers that David (who was from Kenya) was not qualified to work with wreckers because he did not have the requisite experience, did not speak English, and had not been "adequately trained." *Id.*, ¶ 15. "Thus, Mr. Coffey's injuries were the result of KBR's failure to properly hire, train, and supervise its personnel in Iraq." *Id.* Plaintiff

3

alleges that supervisors were aware that some of the workers lacked the required experience. *Id.*, ¶ 17. Further, the training was "substandard" and KBR's supervision was "inadequate." *Id.*, ¶¶ 18-20.

Plaintiff makes a series of allegations related to the class action nature of his complaint that are not relevant to the issues raised in the instant motion to dismiss. *Id.*, ¶¶ 30-37. With respect to his individual injuries, Plaintiff asserts that they were "negligently caused by KBR's actions and/or omissions." *Id.*, ¶ 39. He lists exemplar acts of negligence as: "failing to exercise ordinary or reasonable care in hiring, training, and supervising their employees," "failing to exercise ordinary or reasonable care in providing a safe working environment," "failure to exercise ordinary or reasonable care in responding to requests of its workers, employees," failure to properly supervise the project or premises, and failure to supervise workers so as to prevent accidents. *Id.*, ¶ 41.

The second count of Plaintiff's complaint raises a claim of negligent undertaking pursuant to the Restatement (Second) of Torts. *Id.*, ¶¶ 46-51. Specifically, Plaintiff claims that Defendants were negligent in failing to investigate the history of employees such as David, failing to supervise those employees to ensure they were adequately trained and did not cause injury to other employees, and failing to investigate employees when Defendants learned they were unfit or unsafe. *Id.*, ¶ 49. Plaintiff contends that his "claims of negligent

4

hiring, training, supervision, and retention of other workers are not related to Plaintiff's employment with KBR." *Id.*, ¶ 50.

Finally, Plaintiff seeks exemplary and punitive damages. *Id.*, ¶ 59. He also alleges conspiracy and fraud in committing the wrongful acts alleged in his complaint. *Id.*, ¶¶ 63-79.

## B.    Contentions

Defendants ask the court to dismiss Plaintiff's complaint for lack of subject matter jurisdiction because in his Employment Agreement, Plaintiff agreed to arbitrate these types of claims when he was hired by KBR. Defendants also aver that Plaintiff cannot bring a class action against Defendants because such a remedy is barred by the terms of the alternative dispute resolution provisions in the Employment Agreement.

Plaintiff responds that although he signed an Employment Agreement with KBR and that Agreement contains an arbitration provision, the scope of that Agreement does not cover the claims raised here because those claims are not related to events occurring in Plaintiff's workplace. Plaintiff further argues that the class action limitation contained in the Employment Agreement is not enforceable because it is unconscionable to preclude the availability of a class action remedy in any forum, including the arbitration proceeding. Plaintiff contends that such a limitation goes against the public policy of Georgia, Texas, the Federal Arbitration Act, and the rules of the American Arbitration Association. Finally,

Plaintiff asserts that the class action prohibition is not severable from the remainder of the Employment Agreement, and therefore none of Plaintiff's complaint may be submitted to arbitration.

## II.    Discussion

### A.    Employment Agreement and Terms of the Dispute Resolution Program

Plaintiff began working as a Senior Mechanic in Iraq for SEII on February 21, 2008. There is no dispute that Plaintiff executed an Employment Agreement with SEII which took effect on February 28, 2008. Paragraph 26 of this Employment Agreement states:

> Employee also agrees that they will be bound by and accept as a condition of employment the terms of the KBR Dispute Resolution Program which are herein incorporated by reference. EMPLOYEE UNDERSTANDS THAT THE DISPUTE RESOLUTION PROGRAM REQUIRES, AS ITS LAST STEP, THAT ANY AND ALL CLAIMS THAT EMPLOYEE MIGHT HAVE AGAINST THE COMPANY (OR ITS OWNERS, SUBSIDIARIES, OTHER AFFILIATES, EMPLOYEES, OTHER REPRESENTATIVES, OR CONTRACTORS) EITHER (i) RELATED TO THEIR EMPLOYMENT, INCLUDING THE TERMINATION OF EMPLOYMENT, OR (ii) FOR PERSONAL INJURIES ARISING IN THE WORKPLACE, BE SUBMITTED TO BINDING ARBITRATION INSTEAD OF THE COURT SYSTEM.
>
> It is expressly understood that, in the case of any controversy described above, all parent, subsidiary and affiliate or associated corporations of Employer, and of their officers, directors, employees, insurers and agents are third party beneficiaries to this provision and are entitled to invoke, enforce and participate in arbitration pursuant to this provision.

Employment Agreement, ¶ 26. Plaintiff signed a New Hire/Rehire Agreement which also contains provisions whereby the employee agreed to be bound by the KBR Dispute

6

Resolution Program. *See* New Hire/Rehire Agreement, at 3. The KBR Dispute Resolution Program, itself, notes:

> Employment or continued employment after the Effective Date of this Plan constitutes consent by both the Employee and the Company to be bound by this Plan, both during the employment and after termination of employment. Submission of an application, regardless of form, for employment constitutes consent by both the Applicant and the Company to be bound by this Plan.

*See* Dispute Resolution Program, Exh. C, at 10.

The terms of KBR's Dispute Resolution Program provide for the submission of disputes to binding arbitration before an independent arbitrator. Employees are permitted to have legal counsel, the parties engage in discovery in accordance with the Federal Rules of Civil Procedure, and employees who succeed in the arbitration may be awarded their attorney's fees. The Program does not preclude the application of punitive damages. KBR pays the administrative expenses of the arbitration except for the $50 filing fee. Under KBR's Legal Consultation Plan, the Dispute Resolution Program may pay up to $2,500 per year to cover costs of consultation with an attorney.

The terms of the Dispute Resolution Program describe the disputes it is to cover:

> all legal and equitable claims, demands and controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law, between persons bound by the Plan or by an agreement to resolve Disputes under the Plan, or between a person bound by the Plan and a person or entity otherwise entitled to its benefits, including, but not limited to, any matters with respect to:
> . . . .

2.      The employment or potential reemployment of an Employee, including
        but not limited to the terms, conditions, or termination of such
        employment with the Company;

. . . .

4.      Any other matter related to or concerning the relationship between the
        Employee and the Company. . . .;

. . . .

7.      Any personal injury or death.

*See id.* at 2-3.

The Dispute Resolution Program also contains a limitation on class actions:

(i)     Each dispute shall be arbitrated on an individual basis.  Neither the
        Company nor any Employee or Applicant may pursue any Dispute on
        a class action, collective action or consolidated basis or in a
        representative capacity on behalf of other persons or entities who are
        claimed to be similarly situated, or participate as a class member in
        such proceeding.  The arbitrator in any proceeding under this Plan
        shall have no authority to conduct the matter as a consolidated, class
        or collective action.

(ii)    If the procedural limitation in subparagraph B(i) of this section is held
        unenforceable by a court in a proceeding in which a party seeks to
        pursue a class or collective action or otherwise act in a representative
        capacity, then this Plan shall not apply with respect to that class or
        representative action which shall proceed instead before the court.  If
        the court, however, ultimately denies the party's request to proceed on
        a class, collective or representative basis, then the party's individual
        claim(s) shall be subject to this Plan and referable to arbitration
        pursuant to the Plan's terms.

*See id.* at 5.

The rules of the Program also state:

The substantive legal rights, remedies, and defenses of all Parties are
preserved.  In the case of arbitration, the arbitrator shall have the authority to
determine the applicable law and to order any and all relief, legal or equitable,

AO 72A
(Rev.8/82)

including punitive damages, which a Party could obtain from a court of competent jurisdiction on the basis of the claims made in the proceeding.

. . . [I]n any proceeding before an arbitrator, the arbitrator, in the arbitrator's discretion, may allow a prevailing Employee or Applicant a reasonable attorney's fee as part of the award. The discretion to allow an award of fees under this subsection is in addition to any discretion, right or power which the arbitrator may have under applicable law. However, any award of fees shall be reduced by any amounts which have been or will be paid by the KBR Employee Legal Consultation Plan.

*See id.* at 8.

The Program also provides that the expenses of witnesses are to be "borne by the Party producing such witnesses, except as otherwise provided by law or in the award of the arbitrator." *See id.* at 22. The employee is required to pay a $50 fee for initiating arbitration. *Id.* Fees other than discovery costs, expert witnesses, and attorney's fees are not the responsibility of the employee, but rather are paid by KBR. *Id.*

### B.    Propriety of Class Action Limitation in Employment Agreement

Before the court can consider whether the class action limitation in the Employment Agreement renders the agreement to arbitrate unenforceable, the court must determine the issues of who should decide this question – the court or the arbitration panel – and what law applies to it. In *Dale v. Comcast Corp.*, 498 F.3d 1216 (11th Cir. 2007), the Eleventh Circuit considered the question of whether an arbitration agreement's class action waiver was unconscionable. The court stated that the Federal Arbitration Act "allows state law to invalidate an arbitration agreement, provided the law at issue governs contracts generally

9

and not arbitration agreements specifically." *Id.* at 1219 (citing *Bess v. Check Express*, 294 F.3d 1298, 1306 (11th Cir. 2002)). Therefore, "generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements." *Id.* (citing *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996)). The court noted that because the "unconscionability argument places in issue the enforceability of the Arbitration Provision itself, we may decide the issue." *Id.* at 1219 n.2 (citing *Bess*, 294 F.3d at 1306 (citing *Prima Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)). *See also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006) (holding under Federal Arbitration Act that challenge to validity of contract containing arbitration clause is determined in first instance by arbitrators, while challenge to arbitration clause itself should be heard by court); *Jenkins v. First American Cash Advance of Georgia, LLC*, 400 F.3d 868, 877 (11th Cir. 2005) (where class action waiver is contained in arbitration agreement and not in contract generally, federal court may adjudicate claim). Because Plaintiff, here, does not challenge the validity of his Employment Agreement in general but rather only the arbitration provisions, this court is the appropriate body to evaluate those claims.

Having taken jurisdiction over this question, the court must decide what law applies to it. Plaintiff argues that Georgia law should apply because the class action limitation is

"procedural" in that it eliminates a remedy that a plaintiff could seek.[2]  Defendants argue

that Texas law and law developed under the Federal Arbitration Act should apply because

that is the law the parties chose in the Employment Agreement.[3]

As the court noted above, under the Federal Arbitration Act, "written agreements to

arbitrate a dispute arising out of a transaction involving commerce are 'valid, irrevocable,

and enforceable, save upon such grounds as exist at law or in equity for the revocation of

any contract.'" *Dale*, 498 F.3d at 1219 (citing § 2 of the Federal Arbitration Act).  The *Dale*

court then concluded that "[w]e look to state law to determine whether a provision in a

contract is unenforceable."  *Id.* (citing *Bess*, 294 F.3d at 1306-07).  *Dale*, however,

apparently did not involve a contract that contained a choice of law provision.  "In a case

founded on diversity jurisdiction, the district court must apply the forum state's choice of

law rules."  *Federated Rural Elec. Ins. Exchange v. R.D. Moody & Associates, Inc.*, 468

F.3d 1322, 1325 (11th Cir. 2006); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S.

---

[2]Plaintiff speaks in the language of a conflicts of law analysis when he contends that the ability to bring a class action is a "procedural" right and therefore governed by the law of the forum.  The court finds this is not the proper analytical framework.  The wide number of cases to address the issue of class action preclusion provisions in arbitration agreements focus on whether that provision would be substantively unconscionable under state law.  As the court sets forth below, the conflict of law analysis requires at first step, a consideration of the parties' choice of law provision in the agreement.

[3]Because the Employment Agreement contains a choice of law provision, the court need not resort to Georgia's traditional choice of law rules of lex loci contractus, lex loci delicti, and lex fori.

487 (1941). Georgia courts recognize that "parties by contract may stipulate that the laws of another jurisdiction will govern the transaction." *Manderson & Assoc., Inc. v. Gore*, 193 Ga. App. 723, 725 (1989). Such stipulations are enforced, unless the law of the other jurisdiction is contrary to Georgia public policy or the chosen jurisdiction has no substantial relationship to the parties or the transaction. *Id.*

Here, the parties agree that the Employment Agreement contains a choice of law provision pointing to Texas law and federal arbitration law. Specifically, the Agreement contains a provision called "Governing Law" which states that this

> Agreement is formed in the State of Texas, and shall be governed by and construed in accordance with the laws of the State of Texas; except that with respect to all matters or disputes related to the validity or enforceability of provision 26 below [claims/disputes] all issues shall be governed by and construed in accordance with the Federal Arbitration Act.

*See* Employment Agreement, ¶ 25. Paragraph 26 goes on to describe the Kellogg Brown & Root Dispute Resolution Program and secures the applicant's agreement that he would be bound by the arbitration program. *Id.*

The court finds that this choice of law provision covers two separate situations. If a plaintiff's claim related to the Employment Agreement as a contract in general, then the choice of law provision points to Texas law. However, if a plaintiff's dispute relates to the dispute resolution program, then "all issues shall be governed by and construed in accordance with the Federal Arbitration Act." *See* Employment Agreement, ¶ 25. It is clear

12

that Plaintiff is challenging the dispute resolution portion of his Employment Agreement, and therefore, the parties have chosen the Federal Arbitration Act as their governing law.

From a conflicts of law perspective, the Federal Arbitration Act cannot be "contrary to Georgia public policy," and therefore, a Georgia court would not find a public policy reason to decline to enforce a choice of law provision pointing to the law promulgated under the Federal Arbitration Act.[4] It is axiomatic that the Federal Arbitration Act evinces a strong presumption in favor of arbitration. *See*, *e.g.*, *Ivax Corp. v. B. Braun of America, Inc.*, 286 F.3d 1309, 1320 (11th Cir. 2002). But it is also clear that the Federal Arbitration Act allows some room for state law in § 2 which provides that written agreements to arbitrate a dispute arising out of a transaction involving commerce are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." This means that so long as a state law addresses contract issues in general – and does not single out for special treatment arbitration agreements – courts should apply state law to any grounds that might exist in law or equity for the revocation of any contract. *See*, *e.g.*,

---

[4]Whether the Federal Arbitration Act preempts state law is a separate, but related question. It is clear that the Federal Arbitration Act is "preemptive of state laws hostile to arbitration." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367-68 (11th Cir. 2005). The Act therefore "preempts state law to the extent it treat arbitration agreements differently than other contracts." *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 112 (2001). But the issue presented to the court here is not purely one of preemption.

*Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *Perry v. Thomas*, 482 U.S. 492 n.9 (1987).

Courts have consistently cited "unconscionability" as one of these grounds of revocation. In that sense, the application of law governed by and construed in accordance with the Federal Arbitration Act would seem to point back to state law. *See Kristian v. Comcast Corp.*, 446 F.3d 25, 63 (1st Cir. 2007) (noting that in effect, "these state contract law doctrines, by operation of the FAA, become part of the federal substantive law of arbitrability" and finding that in addition to state unconscionability law, federal court may also apply a "vindication of statutory rights analysis"); *see also Booker v. Robert Half International, Inc.*, 413 F.3d 77 (D.C. Cir. 2005) (applying vindication of statutory rights analysis to claims of race discrimination and wrongful constructive discharge under District of Columbia law). The only state law to be applied in this instance would be the law of Georgia. The parties choose the law of Texas to control non-arbitration issues only. *But see Gay v. CreditInforum*, 511 F.3d 369 (3d Cir. 2007) (raising question of whether development of federal common law under Federal Arbitration Act, which should theoretically be the same across the country, could ever conflict with state law).[5] In any

---

[5]The court notes that a similar situation arose in *Jenkins v. First American Cash Advance of Georgia, LLC*, 400 F.3d 868 (11th Cir. 2005). There, the arbitration agreements contained choice of law provisions pointing to the Federal Arbitration Act, but stating that if a court determined that the Act did not apply to a particular transaction, South Dakota arbitration law would govern. *Id.* at 875 n.7. Choice of law provisions in various promissory notes also indicated the notes would be controlled by South Dakota law. *Id.*

AO 72A
(Rev.8/82)

event, as the court discusses below, the outcome of the unconscionability analysis would be the same under either Texas or Georgia law.

Now that the court has concluded that Georgia law on unconscionability plus whatever benefit can be gained from reference to the federal common law of arbitration should be applied to the parties' dispute, here, the court reviews Eleventh Circuit authority on the unconscionability of class waivers and arbitration provisions. In determining whether a contract is unconscionable, Georgia courts consider both procedural and substantive unconscionability. *See*, *e.g.*, *NEC Techs., Inc. v. Nelson*, 267 Ga. 390 (1996). Procedural unconscionability surrounds the circumstances under which the contract was made and substantive unconscionability analyzes the terms of the contract themselves. *NEC*, 267 Ga. at 391. Plaintiff, here, has not raised any procedural difficulties, and the court considers only the potential substantive unconscionability of the agreement, which includes factors such as "the commercial reasonableness of the contract terms, the purposes and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." *Id.* at 392.[6] The "basic test for determining unconscionability is 'whether, in light of the

---

The court found it did not need to decide whether Georgia or South Dakota law would apply because it noted that Georgia and South Dakota unconscionability laws mirrored one another. *Id.* Here, unlike in *Jenkins*, the parties specified that Texas law applied to the contractual issues and said nothing on whether a state's arbitration law would apply.

[6]Plaintiff briefly argues that the "take-it-or-leave-it" nature of the arbitration agreement renders it procedurally unconscionable, but Plaintiff cites no case law to support this contention in the employment context and focuses solely on the class action provision

15

general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." *Id.* at 391.

In *Jenkins v. First American Cash Advance of Georgia, LLC*, 400 F.3d 868 (11ᵗʰ Cir. 2005), borrowers brought a class action suit against two banks raising state law claims challenging payday loan agreements. The defendants argued that the plaintiffs had signed an agreement requiring disputes to be sent to arbitration. The plaintiffs challenged arbitration on the basis of unconscionability under Georgia law due to the class action preclusion. The court first recognized that prior Eleventh Circuit cases had approved as valid and enforceable arbitration agreements that precluded class action relief. *Id.* at 877-78. The court then considered whether the consumers would be able to obtain legal representation without the class action vehicle. *Id.* at 878. The court found significant the fact that the arbitration agreement permitted consumers to recover attorney's fees if they were allowed under the statute or applicable law, so that "precluding class action relief will not have the practical effect of immunizing" defendants. *Id.* The court noted that "federal circuit courts have recognized that arbitration agreements prohibiting class action relief do not necessarily choke off the supply of lawyers willing to pursue claims on behalf of

---

in his unconscionability argument. A "take-it-or-leave-it" employment agreement on its own is not sufficient to render a contract unconscionable as the Eleventh Circuit has upheld a take-it-or-leave-it employment agreement containing an arbitration clause. *See*, *e.g.*, *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378 (11ᵗʰ Cir. 2005).

debtors." *Id.* (quotations and citations omitted). "These courts explained that when the opportunity to recover attorney's fees is available, lawyers will be willing to represent such debtors in arbitration." *Id. See*, *e.g.*, *Randolph v. Green Tree Fin. Corp.-Alabama*, 244 F.3d 814, 819 (11th Cir. 2001) ("contractual provision to arbitrate Truth in Lending Act claims is enforceable even if it precludes a plaintiff from utilizing class action procedures in vindicating statutory rights under Act"); *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 638 (4th Cir. 2002) (rejecting argument that "the Arbitration Agreement is unenforceable as unconscionable because without the class action vehicle, she will be unable to maintain her legal representation given the small amount of her individual damages"); *Johnson v. West Suburban Bank*, 225 F.3d 366, 369 (3d Cir. 2000) (upholding arbitration clause "even though they may render class actions to pursue statutory claims under the Truth in Lending Act . . . unavailable").

Because *Randolph* concerned claims under the Truth in Lending Act, the court considered whether the statutory basis of the plaintiffs' claims affected the validity of an arbitration agreement that precluded class actions. Referring to *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), and *Bowen v. First Family Financial Services, Inc.*, 233 F.3d 1331 (11th Cir. 2000), the court determined that Congress did not create a non-waivable right to bring Truth in Lending Act claims in a class action format or that arbitration was "inherently inconsistent" with the Truth in Lending Act's enforcement scheme. 244 F.3d

17

at 818. In reiterating these determinations in *Randolph*, the court noted the Supreme Court's instruction that it had previously "rejected generalized attacks on arbitration that rest on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants." *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 89-90 (2000).

In *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005), employees of defendant filed lawsuits raising claims under the Fair Labor Standards Act, the Age Discrimination in Employment Act, the Employee Retirement Income Security Act, and Title VII. All plaintiffs had agreed to submit disputes to the process outlined in the company's Dispute Resolution Policy. The defendants filed motions to compel arbitration and the plaintiffs challenged the validity of the arbitration agreements. Among many issues, the court addressed whether the arbitration agreement was unconscionable under Georgia law due to the prohibition on class actions. The court noted that under Georgia law, an unconscionable contract is "such an agreement as no sane man not acting under a delusion would make and that no honest man would take advantage of." *Id.* at 1378 (quoting *Hall v. Fruehauf Corp.*, 179 Ga. App. 362 (1986)).

With respect to mutuality, the court stated:

Under the [Dispute Resolution Policy], some claims, many of which would typically be brought by an employee, are subject to arbitration and others, many of which would be brought by Gulfstream, are not. However, this fact does not render the [Dispute Resolution Policy] unconscionable. The

18

> promises are mutual: both parties are required to arbitrate covered claims, and neither is required to arbitrate non-covered claims. The cases cited by the plaintiffs, which suggest that an arbitration agreement is unconscionable due to lack of mutuality if only the employee is required to arbitrate, are inapposite. In any event, Georgia law provides that an arbitration provision is not unconscionable because it lacks mutuality of remedy.

*Id.* (citing *Saturna v. Bickley Construction Co.*, 252 Ga. App. 140 (2001)).

The *Caley* court then rejected any per se argument that the preclusion of the class action device would render an arbitration agreement unconscionable, noting that the Supreme Court has explained that "the fact that certain litigation devices may not be available in an arbitration is part and parcel of arbitration's ability to offer simplicity, informality, and expedition." *Id.* (citing *Gilmer*, 500 U.S. at 31). The court concluded that the dispute resolution policy's prohibition on class actions is "consistent with the goals" for arbitration "touted" by the Supreme Court in *Gilmer. Id.*

In *Dale*, the Eleventh Circuit held for the first time that an arbitration agreement was substantively unconscionable because it precluded class actions. There, two Comcast cable subscribers filed a putative class action against Comcast alleging the company charged them excessive franchise fees. Comcast sought to compel arbitration and the plaintiffs argued the class action waiver contained in the arbitration agreement was unconscionable. The court reviewed Georgia law on unconscionable contracts and considered the plaintiffs' argument that public policy supports the need for class actions for certain types of claims. The court found that even if successful, the plaintiffs "individually would stand to recover a very small

19

amount." *Id.* at 1220. The court also considered that even though the arbitration agreement

required Comcast to advance the filing fees and the arbitrator's costs and expenses, it held

the subscribers responsible for additional costs, including fees for attorney's and expert

witnesses. Comcast would only pay those fees and costs if it was required to by law.

Further, if Comcast prevailed in the arbitration, the subscribers would have to reimburse

Comcast for the advanced fees up to what the subscribers would have had to pay to file the

claim in state court. The plaintiffs argued, therefore, that no individual person would raise

a claim, and without the class action vehicle, Comcast's alleged practice of overcharging

subscribers would continue unabated. *Id.*

The court found that the plaintiffs' unconscionability argument was not precluded by

*Caley* because *Caley* did not "consider a factual scenario in which a remedy was effectively

foreclosed because of the negligible amount of recovery when compared to the cost of

bringing an arbitration action." *Id.* at 1221. "More importantly, a review of the claims in

*Caley* shows that each provided for the recovery of attorneys' fees and/or expert costs

should the plaintiff prevail." *Id.* (also noting that *Jenkins* and *Randolph* provided for the

same). In contrast, the *Dale* subscribers could not recover attorney's fees for claims raised

under the Cable Act. *Id.* at 1222. The court did note that the subscribers had the potential

for recovering attorney's fees on their state law claims under O.C.G.A. § 13-6-11.

"Nonetheless, the potential recovery of attorneys' fees and litigation costs under O.C.G.A.

§ 13-6-11 does not provide the same incentive for an attorney to represent an individual plaintiff as the automatic, or likely, award of fees and costs available to a prevailing plaintiff for the claims asserted in *Caley*, *Jenkins*, and *Randolph*." *Id.* at 1223. Because of this, the court found that none of the Eleventh Circuit precedent was controlling and went on to review the law of other circuits.

The court concluded:

> [w]ithout the benefit of a class action mechanism, the subscribers would effectively be precluded from suing Comcast for a violation of [the Cable Act]. The cost of vindicating an individual subscriber's claim, when compared to his or her potential recovery, is too great. Additionally, because the Cable Act does not provide for the recovery of attorneys' fees or related costs for the violations alleged by the subscribers, and because state law allows fees and costs to be awarded only where bad faith is shown, it will be difficult for a single subscriber to obtain representation. This will allow Comcast to engage in unchecked market behavior that may be unlawful. Corporations should not be permitted to use class action waivers as a means to exculpate themselves from liability for small-value claims.

> We thus conclude that the enforceability of a particular class action waiver in an arbitration agreement must be determined on a case-by-case basis, considering the totality of the facts and circumstances. Relevant circumstances may include, but are not limited to, the fairness of the provisions, the cost to an individual plaintiff of vindicating the claim when compared to the plaintiff's potential recovery, the ability to recover attorneys' fees and other costs and thus obtain legal representation to prosecute the underlying claim, the practical affect the waiver will have on a company's ability to engage in unchecked market behavior, and related public policy concerns.

*Id.* at 1224.

21

The court now applies this collective body of law to the provisions of the parties' agreement here. Plaintiff argues that the class limitation is not "fair" because it is contrary to Federal Rule of Civil Procedure 23 which authorizes class actions. Plaintiff also contends that precluding class actions is unfair because many employees will not even know they have a negligence claim against their employer. He then avers that although the provision is drafted as mutual – that is both KBR and the employee are limited to arbitration – as a practical matter, KBR would never have a reason to sue its own employees on a class-wide basis, so KBR is not giving up any rights. Current employees will not want to sue on an individual basis due to fear of reprisals in the form of termination or refusal to promote. Finally, Plaintiff argues that the fact that an employee could have the potential to receive attorney's fees will not provide a sufficient basis upon which to allow the preclusion of a class action, as the Eleventh Circuit discussed in *Dale*. At the very least, the attorney's fees would need to be automatic, contends Plaintiff.

The court notes that the claims raised in this case, unlike those considered by the Eleventh Circuit in *Caley*, *Jenkins*, *Randolph*, and *Dale*, involve personal injury negligence and not statutory causes of action. Even for personal injury claims brought in the judicial forum, a plaintiff is not guaranteed the recovery of attorney's fees, yet there is no shortage of attorneys willing to take personal injury claims on a contingency fee basis. The court finds this factor distinguishes Plaintiff's claims here from those raised in *Dale* and other

22

"consumer" litigation cases. Unlike a statutory situation, such as that in *Dale* where a plaintiff might only have the potential to recover $10 in damages, personal injury cases are worth substantially more money and find their way regularly into judicial arenas even with no guarantee of the recovery of attorney's fees. The public policy discussion in *Dale* favoring the ability of plaintiffs to file on a class basis is premised on the fact that no attorney would consider taking a cable consumer case on a contingency basis where recovery is as paltry as $10. The same public policy concerns do not inure to a personal injury claim. Plaintiff's argument would require us to elevate personal injury claims in arbitration to a higher status than they would have even in judicial forums. Further, the court does not find that the preclusion of class actions in these circumstances would leave KBR's actions to go unchallenged. Every day individuals sue automobile manufacturers for personal injury and no one contends that the fact that "only" an individual is filing suit permits a manufacturer's allegedly abusive practices to proceed unchecked.

Significantly, the KBR Dispute Resolution Program authorizes an arbitrator to award punitive damages if they are available at law. Further, the arbitrator is authorized to award attorney's fees to the prevailing party's attorney even if those fees were not authorized under the relevant law. The administrative expense of filing the arbitration is limited to $50 with KBR paying the remainder of administrative expenses. Additionally, KBR's Employee Legal Consultation Plan provides up to $2500 for employees to consult with an attorney.

AO 72A
(Rev.8/82)

These provisions go a considerable way toward making arbitration an attractive option for an attorney.

Further, the court does not find that any of the provisions of the Dispute Resolution Program are "unfair" as that term is used (but not defined) in *Dale*. Ample Supreme Court precedent demonstrates that even if an arbitration provision eliminates a remedial right that might be available in a judicial forum, that does not render the arbitral forum insufficient; in fact, it might be one of the benefits of arbitration. Therefore, the mere fact that an arbitration provision contains a class action preclusion does not per se render it unconscionable in light of Federal Rule of Civil Procedure 23. If that were true, the Eleventh Circuit would not have had to develop its deep case law in this area.

The court similarly finds unpersuasive Plaintiff's contention that an employee may not know he has a negligence claim against KBR unless another employee sponsors a class action. Again, Plaintiff seeks to represent a class of individuals allegedly injured in the line of work due to KBR's negligence in hiring and supervision. The court finds that personal injury – unlike overcharging on a cable bill or malfeasance in corporate performance – is a fact of which an individual employee would be singularly aware.[7] The court also rejects

---

[7]The personal injury context differs substantially from that of the pay day loan or other consumer injuries that were raised in *Muhammad v. County Bank of Rehoboth Beach, Delaware*, 190 N.J. 1 (2006), the case cited by Plaintiff in support of his contention that employees may not be aware of the fact that they have been injured due to the negligence of KBR.

Plaintiff's argument that an individual would not pursue claims against KBR if he is still employed and by removing the class action option, those individuals who fear retribution would have no other recourse. Again, the court notes that in implementing an arbitration program, KBR is not required to put individuals in a ***better*** position than they would be in a judicial forum. Every employee who files suit against his employer weighs the risks and benefits of doing so. Despite any potential risks, innumerable employees file employment discrimination or personal injury claims against their current employers. Finally, as the *Caley* court noted, the mutuality of the requirement to arbitrate – even if it might not be used by one party – is sufficient, particularly where Georgia law does not require mutuality.

The court notes that the same result would be produced under the law of Texas. Plaintiff asserts that the Supreme Court of Texas' decision in *In re Poly-America*, 262 S.W.3d 337, 351-53 (Tex. 2008), would render the class action limitations in the arbitration provision here unconscionable. The court, however, finds that *In re Poly-America* is not so clear cut. As an initial matter, in finding the arbitration provisions unconscionable, the Supreme Court of Texas relied to a great extent on the fact that the plaintiff's claims arose under the Texas Workers' Compensation Act, and that the arbitration provision eliminated two remedies provided for under that Act: (1) reinstatement of the employee and (2) punitive damages. Because those remedies were specifically provided for by the Texas legislature in the Texas Workers' Compensation Act, the Supreme Court of Texas said the

25

barring of those remedies rendered the arbitration provisions unconscionable. Further, the analysis in *In re Poly-America* was strongly focused on the "vindication of statutory rights" theory and not general state law grounds of unconscionability. Here, in contrast, the KBR program allows for punitive damages if they would otherwise be available under the relevant law and also gives the arbitrator the discretion to award attorney's fees even if they would not be available in a judicial forum. *In re Poly-America*, therefore, is clearly distinguishable.

The court also notes that forming the background of part of this discussion is the potential severability of any of the arbitration provisions. The Employment Agreement specifically states:

> If the procedural limitation in subparagraph B(i) of this section [prohibiting class actions in arbitration] is held unenforceable by a court in a proceeding in which a party seeks to pursue a class or collective action or otherwise act in a representative capacity, then this Plan shall not apply with respect to that class or representative action which shall proceed instead before the court. If the court, however, ultimately denies the party's request to proceed on a class, collective or representative basis, then the party's individual claim(s) shall be subject to this Plan and referable to arbitration pursuant to the Plan's terms.

Employment Agreement, ¶ 26. The parties disagree as to the scope of this clause, but the court finds the language clear. The court rejects Plaintiff's contention that if a court strikes down the class action provision, the entire arbitration provision fails. Rather, the court interprets Paragraph 26 to state that if an individual attempts to raise a class action claim in court and that court determines the class action prohibition is not enforceable, then the KBR

Dispute Resolution Plan shall not apply to that individual's potential class action claim and that individual may pursue his claim on behalf of a potential class in court. (The court understands the purpose of this provision from KBR's perspective. Should KBR not be able to prevent the formation of a class action, it would prefer to defend such class action in a court and not before an arbitration panel.) However, if the court ultimately denies class certification, the individual must take his claim, revert to the Dispute Resolution Plan, and return to arbitration.

The take-away from all of this is that this severability clause is not all encompassing and does not automatically vitiate the entire arbitration process. Further, the class action limitation is complete only with respect to class actions in an arbitration context. A court may still order class action in a judicial context. This discussion is important for several reasons. As *Kristian* indicates, it would be difficult to find such a provision in direct conflict with Federal Rule of Civil Procedure 23 (as Plaintiff argues here) because the provision cannot circumvent class actions in court but rather only explicitly bars them in arbitration proceedings. *See* 446 F.3d at 53.

Finally, a note on California law and Plaintiff's reliance on Ninth Circuit precedent. It should come as no surprise that California has its own unique take on issues of arbitration, particularly in the consumer and employment contexts. *See*, *e.g.*, *Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003); *Discovery Bank v. Superior Court*, 36 Cal. 4th 148, 161, 30 Cal. Rptr.3d

AO 72A
(Rev.8/82)

76 (Cal. 2005). Because the Employment Agreement here does not reference California law, nor is there any indication that California law is in accordance with that of Georgia, Texas, or the Federal Arbitration Act, the court declines to rely on any California case or Ninth Circuit case in evaluating the claims brought here. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378 n.21 (11th Cir. 2005) (declining to apply Ninth Circuit case law because it applies California contract law which differs from Georgia law).

Under the facts and circumstances presented here, the court finds, therefore, that KBR's Dispute Resolution Program is valid and enforceable. The class action preclusion provisions of the Program do not render it unconscionable under Georgia (or Texas) law.

## C. Scope of Arbitration Agreement

Now that the court has decided that the class action preclusion provision in the arbitration agreement does not render the agreement invalid, the court considers Plaintiff's assertion that the claims raised in his complaint are not within the scope of the arbitration provision outlined in his Employment Agreement. State law governing the formation of contracts controls this issue. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367-68 (11th Cir. 2005).[8]

To review, the Dispute Resolution Program covers:

---

[8]The court notes that Plaintiff does not challenge Defendants' assertion that Plaintiff's employment agreement is a valid contract. Nor does Plaintiff challenge Defendants' contention that all Defendants sued in Plaintiff's complaint are entitled to argue that under Plaintiff's Employment Agreement, his claims must proceed to arbitration.

AO 72A
(Rev.8/82)

> all legal and equitable claims, demands and controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law, between persons bound by the Plan or by an agreement to resolve Disputes under the Plan, or between a person bound by the Plan and a person or entity otherwise entitled to its benefits, including, but not limited to, any matters with respect to:
>
> . . . .
>
> 2.      The employment or potential reemployment of an Employee, including but not limited to the terms, conditions, or termination of such employment with the Company;
>
> . . . .
>
> 4.      Any other matter related to or concerning the relationship between the Employee and the Company. . . .;
>
> . . . .
>
> 7.      Any personal injury or death.

*See* Dispute Resolution Program, Exh. C, at 2-3.  The court views these terms in light of the Supreme Court's admonition that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Memorial Hospital v. Mercury Construction Co.*, 460 U.S. 1, 24-25 (1983).  Plaintiff, here, claims that in the course of recovering a vehicle, he was injured when another individual negligently operated the control for the wrecker's boom and thereby crushed Plaintiff's finger with the boom.

From the plain terms of the Dispute Resolution Program, it would appear difficult to find Plaintiff's allegations fall outside the scope of the agreement.  Plaintiff, however, relies primarily on *Jones v. Halliburton Co.*, 2008 WL 2019463 (S.D. Tex. May 9, 2008), to support his contention that his injuries did not arise in the workplace.  In *Jones*, the plaintiff signed a contract with the defendant, KBR, to work as an IT Customer Support Analyst in

Baghdad, Iraq. Her employment contract contained an alternative dispute resolution provision, similar to the one at issue here. As part of her contract, Jones was housed in primarily male barracks and contended she was subject to harassment and sexually hostile living conditions. Jones also contended that she was drugged and raped by KBR firefighters. Jones filed suit against KBR raising claims of negligence, sexual harassment and hostile work environment under Title VII, retaliation, false imprisonment, breach of contract, fraud in the inducement, assault and battery, and intentional infliction of emotional distress.

KBR asked the court to compel arbitration of Jones' claims in accordance with her employment agreement. The plaintiff, however, argued that her dispute with the company did not fall within the scope of the arbitration agreement. The court recognized that doubts concerning the scope of arbitration coverage should ordinarily be resolved in favor of arbitration under the federal policy favoring arbitration. *Id.* at *8. The arbitration provision provided that "any and all claims that you might have against Employer related to your employment, including your termination, and any and all personal injury claims arising in the workplace" must be submitted to binding arbitration. Because the arbitration clause used the phrase "related to," the court found the provision to be broad. *Id.* Nonetheless, the court found that several of Jones' claims fell outside the limits of even a broad provision, including her claims for vicarious liability for assault and battery (including rape),

intentional infliction of emotional distress arising out of the assault, negligent hiring, retention, and supervision of employees involved in the assault, and false imprisonment. *Id.* at *9. The court found that Jones could "maintain these claims without reference to her own employment." *Id.* "The fact that the rape was allegedly perpetrated by Halliburton/KBR employees does not mean that the assault necessarily had anything at all to do with *Ms. Jones'* employment." *Id.* (emphasis in original). "Even a broad provision such as this one has limits, and the Court can say with positive assurance that the alleged sexual assault in this case, and the abovementioned claims arising out of that assault, do not even touch on Ms. Jones' employment." *Id.* The court rejected the notion that under the Defense Bases Act, Jones' injuries would be considered within the scope of employment, finding that the purposes and goals of a worker's compensation plan are different from an arbitration provision. *Jones*, however, did note that two other district courts found that sexual assault allegations fell within the scope of the same employment agreement. *See Cravetz v. Halliburton*, No. 7-20285-CIV-ZLOCH (S.D. Fla. July 24, 2007), and *Barker v. Halliburton* ___ F. Supp. 2d ___, 2008 WL 276390 9 (S.D. Tex. Jan. 30, 2008).

The court need not share any views on the correctness of the outcome in *Jones* to be able to determine that *Jones* is clearly distinguishable from Plaintiff's allegations here. *Jones* relied heavily on the fact that the plaintiff alleged assault and sexual assault and that the attacks took place in her bedroom and not in the workplace. In contrast, Plaintiff, here,

31

was hired by KBR to recover vehicles in Iraq. At the time of Plaintiff's injury, he was working on a military base in Iraq recovering vehicles. Both Plaintiff and the alleged tortfeasor were performing the functions they were hired to do. It is hard to imagine an injury any more closely related to Plaintiff's workplace than this. It would require a great deal for the court to determine that Plaintiff's injuries as alleged here did not amount to "[a]ny personal injury or death." This, clearly, is not a situation of an injury that occurred outside of normal working hours, not at the place of employment (although in a living space provided by the employer), and perpetrated by tortfeasors most certainly not performing their job functions. Plaintiff's claims that his harm was "not within the job description" or that the incident was "patently outside the norm for any wrecker" are wholly unavailing.

When a court concludes that all of the claims raised in a plaintiff's complaint must be submitted to arbitration, the court may dismiss with prejudice the plaintiff's complaint. *See Choice Hotels Int'l Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) ("dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable"); *Alford v. Dean Witter Reynolds, Inc.*, 75 F.2d 1161, 1164 (5th Cir. 1992); *see also Athon v. Direct Merchants Bank*, 2007 WL 2983868 (per curiam) (11th Cir. Oct. 15, 2007) (unpublished decision) (affirming district court's dismissal with prejudice of plaintiff's complaint after granting motion to compel arbitration).

## III.    Conclusion

AO 72A
(Rev.8/82)

The court GRANTS Defendants' motion to dismiss and to compel arbitration [7].

The Clerk of the Court is DIRECTED to DISMISS WITH PREJUDICE Plaintiff's complaint.

**IT IS SO ORDERED** this 13th day of August 2009.

_____/s J. Owen Forrester_____
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)